UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALI AL MAQABLH                                                                                                       Plaintiff

v.                                                                                    Civil Action No. 3:16-cv-00289-RGJ

CRYSTAL HEINZ, ET AL.                                                                                           Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This case comes to the Court on remand from the Sixth Circuit. [DE 153]. The Supreme Court vacated the Sixth Circuit's affirmation of summary judgment in favor of Defendants and remanded for further consideration consistent with the Court's decision in *Thompson v. Clark*. *Al-Maqablh v. Heinz*, 143 S. Ct. 71 (2022). Defendant Crystal Heinz ("Heinz") moves to dismiss all claims against her. [DE 170]. Plaintiff Ali Al Maqablh ("Maqablh") opposes the motion. [DE 188]. Defendants Lindsay Jo Alley ("Alley") and Trooper James Phelps ("Phelps") move for summary judgment on all claims pending against them. [DE 172; DE 174]. Maqablh cross moves for summary judgment on all claims against Alley and Phelps. [DE 173]. Briefing is complete, and the motions are ripe. [DE 187; DE 190; DE 181; DE 186; DE 189; DE 196; DE 198; DE 191; DE 199; DE 200]. For the reasons below, Heinz's Motion to Dismiss [DE 170] is **DENIED as moot**; Alley's Motion for Summary Judgment [DE 172] is **DENIED as moot**; Maqablh's Motion for Summary Judgment [DE 173] is **DENIED**; and Phelps' Motion for Summary Judgment [DE 174] is **GRANTED**.

**I.      Background**

Maqablh filed his original Complaint in this court alleging multiple claims against a private citizen, Jefferson County, Trimble County, and various Kentucky state employees, including Trooper Phelps and County Attorney Heinz, regarding criminal proceeding against him related to

1

the contact he had with the mother of his child, Alley. [DE 1]. He later asserted additional claims in an Amended Complaint. [DE 73]. The malicious prosecution claim against Heinz was dismissed at the screening stage on grounds of her absolute prosecutorial immunity. [DE 10 at 142–43]. The court also granted a motion to dismiss the remaining claims against Heinz, finding that the challenged statutes were not unconstitutionally vague. [DE 45]. In all, two of Maqablh's claims survived initial screening and a series of motions to dismiss: (1) the § 1983 individual-capacity federal claim against Phelps for malicious prosecution and (2) state law malicious prosecution claims against Alley and Phelps in his individual capacity. [DE 10].

Following discovery, Alley and Phelps moved for summary judgment on the remaining federal and state malicious prosecution claims. [DE 113]. The court granted the motions, finding that Maqablh had failed to prove a necessary element of each claim: that the proceedings were terminated in Maqablh's favor. [DE 123 at 1896]. The court based its analysis on Sixth Circuit precedent, which defined favorable termination as requiring an indication of innocence from a "one-sided" dismissal "not the result of any settlement or compromise." [*Id.* at 1895 (quoting *Ohnemus v. Thompson*, 594 F. App'x 864, 867 (6th Cir. 2014))]. The Sixth Circuit affirmed the judgments. [DE 150].

Shortly after, the Supreme Court decided *Thompson v. Clark*, which held that the favorable termination element of a § 1983 malicious prosecution claim requires only that a plaintiff show their prosecution ended without a conviction—not that it specified their innocence. 142 S. Ct. 1332, 1341 (2022). The Supreme Court granted Maqablh's petition for certiorari, vacated the Sixth Circuit's decision, and remanded for further consideration consistent with the rule in *Thompson*. [DE 153]. This Court now considers the parties' competing motions regarding the affected claims on remand.

## II. Scope of Remand

The parties disagree about the scope of this Court's inquiry on remand. Maqablh argues in his motion for summary judgment that law-of-the-case doctrine and mandate rules limit the remand to the single favorable disposition element of the federal and state malicious prosecution claims. [DE 173 at 2516–17; DE 190 at 3366]. Yet he simultaneously argues in response to Heinz's motion to dismiss that the Court should reconsider his constitutional vagueness claims and Heinz's prosecutorial immunity. [DE 188 at 3291–3307]. Heinz argues that none of the claims against her should be reconsidered on remand because they are unaffected by the Supreme Court's holding in *Thompson*. [DE 170 at 2404–05]. Alley argues the state law malicious prosecution claim against her should not be considered on remand because *Thompson* did not change the standard for favorable termination under Kentucky law. [DE 172 at 2431–34]. Phelps also argues that Maqablh waived reconsideration of his state court claims by not raising them in his petition for certiorari. [DE 174 at 2528].

### A. State law claims

Supreme Court Rule 14.1(a) states: "The statement of any question presented is deemed to comprise every subsidiary question fairly included therein. Only the questions set out in the petition, or fairly included therein, will be considered by the Court." There are dual purposes for Rule 14.1(a): "it provides the respondent with notice of the grounds upon which the petitioner is seeking certiorari, and enables the respondent to sharpen the arguments as to why certiorari should not be granted." *Yee v. City of Escondido*, 503 U.S. 519, 535–36 (1992). A question that is "related" or "complementary" to that raised in the petition for certiorari is not "'fairly included therein.'" *Id*. In *Yee*, the questions of regulatory and physical takings were found to "exist side by side, neither encompassing the other." *Id*. at 537. A petition raising one claim did not allow the Court to rule on the other. *Id*.

Maqablh's petition for certiorari identified the sole question presented as reconsideration of his § 1983 claims:

> "Petitioner brought a claim against [Respondents] under 42 U.S.C. § 1983 for malicious prosecution. The courts below rejected Petitioner's claim on the ground that the prosecution terminated in a manner that did not affirmatively indicate his innocence or demonstrate that a conviction had become improbable . . . The sole question presented is whether the Sixth Circuit's decision should be vacated and remanded for reconsideration in light of *Thompson*."

Brief for Petitioner at 2, *Al-Maqablh v. Heinz*, 143 S. Ct. 71 (2022) (No. 21-1399). If that left any doubt, when Defendants' brief pointed out that the petition did not seem to revive the state law malicious prosecution claim, Maqablh replied: "the Question Presented is limited to the Section 1983 claim and so arguments about state law claims are irrelevant." Reply Brief for Petitioner at 5, *Al-Maqablh v. Heinz*, 143 S. Ct. 71 (2022) (No. 21-1399). When a party fails to pursue a claim on appeal from a claim-dispositive ruling they are barred from relitigating that claim after remand. *See FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 286-87 (6th Cir. 2018) ("under the doctrine of law-of-the-case, a party that fails to appeal an issue waives his right to raise the issue before the district court on remand or before the Sixth Circuit on appeal after remand") (citations and quotations omitted). As a result, Maqablh is barred against raising any claims not raised in his petition for certiorari.

Further, a state malicious prosecution claim is not considered "fairly included" in a § 1983 malicious prosecution claim. Sup. Ct. R. 14.1(a). Like the claims in *Yee*, they might be related in subject matter, but because each consists of different elements, neither "encompass[es] the other." *Yee*, 503 U.S. at 535–36. Because the state claims are not included in the federal ones, and because Maqablh's own statements belie his argument that the state claims were preserved on appeal, the Court finds the state malicious prosecution claims waived. Even if they had not been waived, the

claims are outside the scope of the remand because Kentucky law was not affected by the *Thompson* ruling.

### B. Law of the case

The Court is bound by law-of-the-case doctrine to address the surviving claims solely as instructed in the remand.[1] The Sixth Circuit has summarized law of the case:

> What we call law of the case has two parts. The first part, known as the "mandate rule," is vertical. A lower court "is bound by the decree [of a higher court] as the law of the case, and must carry it into execution according to the mandate." The rule springs from the hierarchical structure of our judicial system and leaves no room for discretion. If the U.S. Supreme Court resolves an issue in a case and remands the matter to us, we are duty bound to follow the mandate of the superior court. So too at the trial level. . .
> The second part. . . is horizontal. It "expresses the practice of courts generally to refuse to reopen what has been decided" by an earlier panel of the same court in the same case. Unlike its upward counterpart, the sideways version of the law of the case is "not a limit to [a court's] power." A later panel of an appellate court, like a district court, "has the power to revisit prior decisions of its own or of a coordinate court in any circumstance."

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 733–34 (6th Cir. 2019) (Sutton, J., concurring) (citations omitted).

As for the vertical element, a mandate may take two forms: general or limited. *See United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). Appellate courts have broad discretion in forming their mandates. *See* 28 U.S.C. § 2106 (defining the broad appellate power); *see also United States v. Garafano,* 61 F.3d 113, 116 (1st Cir.1995) (interpreting § 2106 to "allow appellate courts the flexibility to adapt their mandates to the particular problem discerned on appeal and to provide an efficient and sensible solution"). A trial court must "implement both the letter and the

---

[1] Plaintiff repeatedly argues law-of-the-case doctrine restricts Defendants' ability to make arguments and assert defenses. [DE 190 at 3365; DE 187-1 at 3269]. Law-of-the-case doctrine is a prudential "restriction self-imposed by the courts in the interests of judicial efficiency." *United States v. Monsisvais*, 946 F.2d 114, 116 (10th Cir. 1991). It does not affect the parties' ability to articulate their respective arguments to the Court.

5

spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994) (internal quotation marks and citation omitted).

Under the horizontal aspect of the rule, a prior ruling may be reconsidered only under one of three extraordinary conditions: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 n. 3 (6th Cir.2000) (citations omitted).

Maqablh argues that the Sixth Circuit's mandate limits the Court to reconsider only one element of his § 1983 malicious prosecution claim: favorable termination. [DE 187-1 at 3269–71]. The exact conditions of the Supreme Court's— and the Sixth Circuit's— remand to this Court were "for further consideration in light of *Thompson v. Clark*." [DE 153 at 2124]. Implementing both the "letter and the spirit" of this mandate and the circumstances of the case, the Court finds this mandate to require reconsideration of any claim substantively affected by the change of law announced in *Thompson*.

The horizontal dimension of the doctrine precludes the Court from reconsidering the affirmance of summary judgment in favor of Defendants on the state malicious prosecution and other dismissed claims. Maqablh alleges that this case presents one of the "extraordinary conditions" required for reconsideration because the previous court committed a "blatant error" when it applied *Broaddus v. Campbell*, 911 S.W. 2d 281 (Ky. Ct. App. 1995) instead of *Duerr v. Kentucky Indiana Bridge & R. Co.*, 116 S.W. 325 (Ky. 1909). [DE 187-1 at 3274]. The Court disagrees. When the earlier court cited *Broaddus* in its summary judgment order it had already established independently sufficient grounds to determine Maqablh had failed to prove the

6

favorable termination prong of the state malicious prosecution claim. [DE 123 at 1895-96]. Further, even if the court had only applied *Broaddus* it would not constitute a clear error. *See McKenzie*, 219 F.3d at 513 n. 3. The case presented analogous facts and offered a faithful recitation of Kentucky law. *See Broaddus*, 911 S.W.2d at 283–84. That Maqablh prefers the language employed in a prior case does not make the court's analysis erroneous.

The sum effect of law-of-the-case doctrine is to limit the Court to reconsideration of any claim which today would be analyzed under the new *Thompson* standard. For the reasons below, the state law claims are outside the scope of this remand because Kentucky law was not affected by the *Thompson* ruling.

### C. *Thompson*'s effect on Kentucky state law

One of the necessary elements of a § 1983 and a Kentucky law malicious prosecution claim is that the criminal proceeding was resolved in the plaintiff's favor. *See Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *1–3 (6th Cir. Nov. 16, 2022). Defendants were previously granted summary judgment on these claims because Maqablh failed to prove this element under the earlier standard. [DE 123]. Maqablh now argues that *Thompson* changed the federal and state standards so his state claims should be reconsidered along with the § 1983 claims on remand. [DE 190].

Section 1983 creates a right of action for individuals to sue state actors in tort for deprivations of constitutional rights. 42 U.S.C. § 1983. Malicious prosecution claims arise out of an individual's Fourth Amendment right to be secure in their persons against unreasonable seizures. *See Thompson v. Clark*, 142 S. Ct. 1332 (2022) ("a Fourth Amendment claim under § 1983 for malicious prosecution [is] sometimes referred to as a claim for unreasonable seizure

pursuant to legal process"). Many states also recognize malicious prosecution claims; however, they arise out of state law, not the federal Constitution

*Thompson* resolved a circuit split and clarified the favorable termination standard in § 1983 malicious prosecution claims. *Thompson*, 142 S. Ct. at 1337. To do so, the Court looked to the most analogous tort at the time § 1983 was enacted in 1871. *Id*. This inquiry had no bearing on the elements of a Kentucky malicious prosecution claim. Maqablh points to no case establishing that Kentucky courts interpret malicious prosecution claims in lockstep with the constitutional claim. Nor could he, since the state's supreme court has tied the claim to the definition adopted by the Restatement Second of Torts. *See Martin v. O'Daniel*, 507 S.W.3d 1, 11 (Ky. 2016) ("[c]onsistent with our established tradition, our adaptation of the Restatement terminology is merged into a single statement applicable to malicious prosecution claims").

Maqablh cites *Caskey v. Fenton*, a recent Sixth Circuit case applying *Thompson*, for his argument that it applies to state law claims. [DE 190 at 3373]. In doing so he misstates its holding. *Caskey* involved state and federal malicious prosecution claims arising from a videotaped traffic infraction. *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *1–3 (6th Cir. Nov. 16, 2022). The Sixth Circuit affirmed the district court's denial of summary judgment on the federal and state malicious prosecution claims because a question of fact remained for the jury. *Id*. at *12. The court specified that the Ohio malicious prosecution claim mirrored the pre-*Thompson* favorable termination standard because it required an indication of innocence. *Id*. Because the district court had already found a genuine dispute of material fact as to favorable termination under a pre-*Thompson* standard, the Sixth Circuit held one must also exist under the identical state law standard. *Id*.

8

While *Caskey* involved standards identical to this case, one fact distinguishes it: there was a genuine dispute about whether the pre-*Thompson* favorable termination standard had been met. *Id*. at * 11.  Applying the same standard, the court here found no such dispute, and the Sixth Circuit affirmed.  [DE 123 at 1896; DE 150 at 2214].  Maqablh also misreads *Caskey* when he claims that the Sixth Circuit applied the § 1983 standard "equally to [Plaintiff's] state law claim." [DE 190 at 3373 (quoting *Caskey,* 2022 WL 16964963, at *12)].  The standard to which this statement refers was the pre-*Thompson* affirmative indication of innocence standard—exactly the same as applied under Kentucky law. *See Caskey,* 2022 WL 16964963, at *11–12 ("Even if our pre-*Thompson* standard applied, the officers' argument would still fail . . . [t]herefore, our conclusion above that a reasonable jury could find favorable termination for Caskey under his § 1983 malicious prosecution claim applies equally to his state law claim."). *Caskey* supports the Court's determination that Maqablh's state law claims are unaffected by *Thomspon*.

Maqablh tries to use law-of-the-case doctrine to foreclose arguments about the undecided § 1983 claim elements while also asking the Court to reconsider previously decided and since waived state claims.  [DE 190 at 3364; DE 188].  This is exactly backwards.  Law-of-the-case— in conjunction with the holding in *Thompson*—forecloses reconsideration of the state law claims and does not affect the Court's analysis of previously unconsidered elements of the § 1983 claim. With the scope of remand defined, the Court will address the parties' motions.

### III.     Heinz's Motion to Dismiss

Maqablh originally raised three claims against Heinz: (1) a § 1983 malicious prosecution claim; (2) constitutional challenges to two Kentucky statutes as being void for vagueness; and (3) a state law malicious prosecution claim.  [DE 1]. All were dismissed before summary judgment.

9

[DE 10 at 142–48; DE 45]. Heinz now moves again under Fed. R. Civ. P. 12(b)(6) to dismiss all claims against her on remand.

As a threshold matter, Maqablh argues that Heinz should not be allowed to raise a 12(b)(6) motion to dismiss because it constitutes a second pre-answer motion in violation of Fed. R. Civ. P. 12 (g), which states: "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12 (g). Heinz's motion does not seek any relief different from or additional to her first motion to dismiss. [*See* DE 19]. All claims had been dismissed before the case was appealed and remanded. Thus, Rule 12(g) does not apply.

Even so, Heinz's motion is moot because the claims against her are not at issue on remand. As discussed above, the Court's inquiry on remand is limited to the sufficiency of Maqablh's § 1983 malicious prosecution claim. The constitutional challenges are therefore outside the scope. And Maqablh waived these claims by not raising them in his petition for certiorari. *See infra* Part I.A. As for the federal and state malicious prosecution claims, the court dismissed them not on their merits, but because Heinz receives absolute immunity in her role as county prosecutor. [DE 10 at 142-48]. *Thompson* neither discussed nor altered the standards for absolute immunity. 142 S. Ct. at 1337 ("The narrow dispute in this case concerns one element of the Fourth Amendment claim under § 1983 for malicious prosecution."). Therefore, the court's dismissal of the § 1983 and state malicious prosecution claims against Heinz remain undisturbed and Heinz's motion to dismiss is denied as moot.

## IV. Alley's Motion for Summary Judgment

The only claim against Alley that survived screening is the state law malicious prosecution claim. [DE 123 at 1894]. As discussed above, the state law claims are outside the scope of the

10

remand. Therefore, the court's prior grant of summary judgment in favor of Alley remains and her motion is denied as moot.

## V. Phelps' and Maqablh's Motions for Summary Judgment

Maqablh and the remaining defendant, Phelps, have cross moved for summary judgment. Because the motions raise similar issues, the Court will address them together. For the reasons discussed above, the state law claim against Phelps is not at issue and the earlier summary judgment in favor of Phelps stands. [DE 123 at 1896].

### A. Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial. *Anderson*, 477 U.S. at 247–48. "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in

11

a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence. . . of a genuine dispute[.]" Fed. R. Civ. Pro. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

**B.    Analysis**

The only claim against Phelps properly before the Court on remand is the § 1983 malicious prosecution claim. To establish a federal malicious prosecution claim, a plaintiff must establish four elements:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (quotation marks and citations omitted).[2]

### 1. Defendant Influenced Decision to Prosecute

The first element does not require the defendant to have *made* the decision to prosecute. *Id*. at 311. Instead, whether an officer influenced or participated in the decision to prosecute is a fact-specific inquiry that "hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id*. at n.9 (citing *Malley v. Briggs*, 475 U.S. 335, 344–45 n. 7 (1986). The Sixth Circuit has held that "participation" should be construed as aiding. *Id*. at 308 n.5 ("To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating."). An officer will not be found to have sufficiently participated if they only turn over truthful reports or other materials. *Id*. at 314 ("It is absolutely clear, however, that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's truthful materials."); *see also McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005) (holding that providing evidence to the prosecutor did not constitute participation by the officer); *Wysong v. City of Heath*, 377 F. App'x. 466, 470–71 (6th Cir. 2010) (holding that officers did not participate in the prosecution when they only provided the prosecutor with truthful information). If an officer goes beyond turning over materials and becomes intertwined at every stage of the prosecution they can be considered a participant. *See Phat's Bar & Grill v. Louisville Jefferson Cnty. Metro Gov't*, 918 F. Supp. 2d 654 (W.D. Ky. 2013). In *Phat's*,

---

[2] Maqablh argues that the Court should not address any elements other than favorable termination. He makes much of the previous court's comment in an earlier order denying Maqablh attorney's fees: "Ultimately, the Defendants' success came down to an issue with a single element of Plaintiff's malicious prosecution claims." [DE 145 at 2097]. Maqablh would have the Court read this to mean the previous court considered and found in his favor every other element of the malicious prosecution claims. A cursory reading of the first summary judgment order precludes this meaning. [DE 123]. The prior court found the lack of favorable termination dispositive and declined to consider the other elements. On remand, the Court must analyze all elements to rule on either party's motion for summary judgment.

the court found a genuine dispute over an officer's participation when he was present at meetings between prosecutor, plaintiff, and plaintiff's counsel, was the only testifying witness for the prosecution at trial, and the parties disputed the truthfulness of his investigatory materials.

A plaintiff may also satisfy the first element by proving that the officer submitted false statements in support of the prosecution either through testimony or investigative reports. *Sykes* 625 F.3d at 316. To do so, plaintiffs must "present evidence that [defendant] '(1) stated a deliberate falsehood or showed reckless disregard for the truth at the hearing and (2) that the allegedly false or omitted information was material to the court's finding of probable cause.'" *Id*. (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006) (alterations omitted)).

Phelps' involvement in the prosecution consists of statements in two investigative "CAD" reports [DE 1-1, "Complaint" at 49-50], a meeting with the county prosecutor [DE 114-1, "Phelps Deposition" at 1044], and a signed affidavit in support of the charges [DE 1-1 at 51]. In the first CAD report from April 2, 2015, Phelps reported to the dispatcher that Alley told him she was planning to contact the county attorney. [DE 1-1 at 49]. In the second CAD report, dated April 3, 2015, these statements are associated with Phelps' badge number:

> "SPOKE W/ CALLER AND GOT INFO. CALLER IS ALSO GOING TO GATHER MORE EMAILS, ETC FROM MALE SUBJECT AND PROVIDE TO [Phelps]. UNIT WILL CONTACT CO ATTNY ON MONDAY TO PROCEED FURTHER . . . [Phelps] SPOKE WITH TRIMBLE CO ATTN, AND SIGNED A COMPLAINT AGASINT AL-MAQULBH FOR HARASSING COMMUNICATION AND FALSELY REPORTING AN INCIDENT"

[sic] [DE 1-1 at 50]. Phelps also testified during his deposition that he was ordered by his sergeant to meet with Heinz while she was preparing the complaint, but that no one else was present at the meeting. [DE 114-1 at 1044–46]. He stated in his affidavit that Maqablh's actions were unlawful and met the elements of the charged offenses. [DE 1-1 at 51].

Unlike the officer in *Phat's Bar & Grill,* Phelps' meeting with the prosecutor did not include Maqablh or his counsel. Nor did Phelps testify at trial because the charges were dropped. He testified in his deposition that he supplied the facts of the repeated calls to Heinz and she determined the charges. [DE 114-1 at 1028]. There is no dispute about the truthfulness of Phleps' statements, although Maqablh disputes the intent behind them. While Phelps' actions are distinguishable from those of the officer in *Phat's*, his participation beyond merely handing over evidence presents a question suitable for determination by a jury. Viewing these facts in the light most favorable to Maqablh, a reasonable juror could find either that Phelps met or failed to meet the degree of participation required to establish the second element of the malicious prosecution claim.

Maqablh could also satisfy this element by proving the falsity of the information provided by Phelps; but he has failed to do so. There is no dispute that the calls occurred or that Phelps was one of the responding officers. [DE 113-1 at 2895]. His statements in the CAD reports were mere recitations of what occurred, not opinions. Maqablh also does not dispute Phelps' assertion that he did not make the decision to prosecute [*Id.* at 2897]. Accordingly, neither Phelps nor Maqablh has established facts sufficient for summary judgment in their favor on the first element.

### 2. *Lack of Probable Cause*

For the next element, Maqablh must show that probable cause did not exist to initiate the proceedings against him. "[W]here there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." *McKinley v. City of Mansfield*, 404 F.3d 418, 445 (6th Cir. 2005). "For probable cause to exist, the facts and circumstances within the officers' knowledge must be sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing

15

*Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)). To determine whether probable cause existed, courts must consider "the totality of the circumstances at the time of the [plaintiff's] arrest and through the time that the criminal proceeding against them commenced." *Sykes*, 625 F.3d at 310-11. This standard was not changed by *Thompson*. 142 S. Ct. 1332, 1340–41 ("officers are still protected by the requirement that the plaintiff show the absence of probable cause").

      Maqablh was charged with harassment and falsely reporting an incident. [DE 1-1 at 51]. Harassment is defined in Kentucky law as intentionally and "repeatedly commit[ting] acts which alarm or seriously annoy. . . and which serve no legitimate purpose." KRS § 525.070. The offense of false reporting is defined as reporting an incident "when the person knows he or she has no information relating to such offense or incident" or while "knowing that it did not occur." KRS § 519.040. The totality of the evidence in front of Heinz when she brought these charges is as follows: Maqablh made three welfare check requests on Alley between June 2014 and April 2015 [DE 53; DE 52; DE 48]; each time the child was found unharmed and Maqablh's claims were unsubstantiated [*Id.*]; the two individuals were engaged in a custody dispute [DE 1-1 at 52]; and Alley reported the calls as harassment [*Id.* at 49]. Maqablh admitted to making the three calls during his deposition. [DE 113-1 at 2895]. He also admitted that the child was found to be safe on each occasion. [*Id.*]. This was sufficient grounds "to warrant a man of reasonable caution" to believe that Maqablh's behavior met the requisite elements of each offense. *Fox*, 489 F.3d at 236. Maqablh has produced no evidence that Heinz knew of any alternative explanations which should have precluded a probable cause finding. Under the facts presented—even crediting that Maqablh sincerely believed his child to be in danger—no reasonable jury could find that Heinz lacked probable cause for the offenses at the time of charging.

### 3. *Deprivation of Liberty*

The third element requires Maqablh to prove that he suffered a deprivation of liberty under the Fourth Amendment. The damages suffered as a result of a malicious prosecution must have subjected "the aggrieved individual to a deprivation of constitutional dimension." *Dean v. Earle*, 866 F. Supp. 336, 340 (W.D. Ky. 1994) (citing *Dunn v. Tennessee.*, 697 F.2d 121, 125 (6th Cir.1982)). Courts have found this element unsatisfied where plaintiffs were not arrested or incarcerated, *see Rogers v. O'Donnell*, 2012 WL 1831242, at *1 (E.D. Ky. May 18, 2012), and where all charges were dropped against a plaintiff who was never arrested. *See Cheolas v. City of Harper Woods*, 467 F. App'x. 374, 378 (6th Cir.2012). However, when the plaintiff was arrested, jailed, and arraigned, *see Guerra v. Rodriguez*, No. 10-199-JGW, 2012 WL 208083, at *10 (E.D.Ky. Jan. 24, 2012), or not arrested but handcuffed and tackled, *see Gordon v. Jones*, No. 3:08CV-P460-S, 2011 WL 847926, at *8 (W.D. Ky. Mar. 8, 2011), courts have found the element satisfied.

Maqablh was never arrested on the charges brought against him. In his response, Maqablh cites *Caskey* for the proposition that the Fourth Amendment recognizes a right to be free from unjust prosecution. [DE 190 at 23 (citing 2022 WL 16964963)]. While this is true, it is unresponsive. The Fourth Amendment has been interpreted to require a showing of damages beyond an initial seizure. *See Sykes*, 625 F.3d at 308–09. Not only was Maqablh never seized, but his charges were dropped and expunged. [DE 113-2 at 2903]. Maqablh points to no case establishing that these injuries rise to the level of a constitutional violation. He also has not alleged any additional injuries. [DE 190 at 3383]. Based on these facts, no reasonable juror could conclude that Maqablh has established the element of deprivation of liberty. *Sykes*, 625 F.3d at 308–09.

### *4. Favorable Termination*

The fourth and final element requires Maqablh to show that the prosecution was resolved in his favor. This element was the focus of the Supreme Court's decision in *Thompson*. The Court held that § 1983 plaintiffs no longer need to prove that their prosecution ended with some affirmative indication of innocence, but "need only show that the criminal prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1341. The charges against Maqablh were dropped without a conviction and later expunged. [DE 113-2 at 2903-05]. Therefore, no reasonable juror could find that Maqablh has failed to establish the element of favorable termination. But, as discussed above, Maqablh cannot establish other required elements of a malicious prosecution claim. Therefore, the Court need not reach Phelps' additional qualified immunity defense, and Phelps' motion for summary judgment is granted.

## VI. Conclusion

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Maqablh's Motion for Summary Judgment [DE 173] is **DENIED**;

2. Phelps' Motion for Summary Judgment [DE 174] is **GRANTED**;

3. Alley's Motion for Summary Judgment [DE 172] is **DENIED** as moot; and

4. Heinz's Motion to Dismiss [DE 170] is **DENIED** as moot.

5. The Court will enter separate judgment.

September 29, 2023

Rebecca Grady Jennings, District Judge
United States District Court

cc: Counsel of record